UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MIRKO ATANASOVSKI,

                    Plaintiff,                              Case No. 19-cv-11518

v.                                                         Paul D. Borman
                                                           United States District Judge
EPIC EQUIPMENT &
ENGINEERING, INC.,

                    Defendant.
_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 19)

On May 23, 2019, Plaintiff Mirko Atanasovski filed a Complaint against his former employer, Defendant Epic Equipment & Engineering, Inc., asserting four claims: (1) Count I – Violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*; (2) Count II – Violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*; (3) Count III – Age Discrimination in Violation of the Michigan Elliott-Larsen Civil Rights Act ("ELCRA"), Mich. Comp. Laws § 37.2101 *et seq.*; and (4) Count IV – Violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.* – Interference & Retaliation. (ECF No. 1, Complaint.)

1

In this employment discrimination case, Plaintiff complains that Defendant discriminated against him because of his age and disability and violated the FMLA when it terminated him as part of a reduction-in-force in which more than half of Defendant's Machine Builders, including Plaintiff, were laid off. Now before the Court is Defendant's Motion for Summary Judgment seeking dismissal of all of Plaintiff's claims. (ECF No. 19.) The motion is fully briefed. The Court held a hearing using Zoom videoconference technology on April 1, 2021, at which counsel for Plaintiff and Defendant appeared. For the reasons that follow, the Court GRANTS Defendant's Motion for Summary Judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

### 1. Defendant Epic Equipment & Engineering

Defendant Epic Equipment & Engineering, Inc. "is a premier supplier of automated assembly and test systems for the automotive powertrain." (ECF No. 1, Complaint ¶ 5, PgID 2.) Defendant builds equipment used by tier one automotive suppliers, including assembly lines, line testers, gage stations, automated lines, and stand-alone stations. (ECF No. 13-5, Deposition of Eric Szlachtowicz ("Szlachtowicz Dep."), at p. 17, PgID 142.) Defendant currently employs approximately 80 to 85 people, but employed approximately 100 people, including

2

contractors, during the 2017 to 2018 time period relevant to this lawsuit. (*Id.* at p. 18, PgID 142.)

### 2.    Plaintiff's employment with Epic

Plaintiff Mirko Atanasovski began his employment with Defendant on May 8, 2017, at the age of 60, as a Machine Builder. (ECF No. 13-2, Offer Letter, PgID 132.) Plaintiff had been recommended to Defendant by a then-current employee, Cliff Madden, who previously worked with Plaintiff at another company, TA Systems. (Szlachtowicz Dep. at pp. 34-35, PgID 146.) Based on that recommendation, Eric Szlachtowicz, Plant Manager, hired Plaintiff to work at Defendant as a Machine Builder at a pay rate of $25.00 per hour. (*Id.*; Offer Letter, PgID 132.)

Plaintiff was first assigned to the "Dana project," led by Dave Schoenfeldt, Lead Builder, and then to the "American Axle project," led by Riffat Sheikh, Plant Foreman. (Szlachtowicz Dep. at pp. 25-26, 58, 84, PgID 144, 152, 158.) Accordingly, Plaintiff reported to Schoenfeldt and/or Sheikh, depending on which job he was working on, and also to Szlachtowicz. (*Id.*)

Plaintiff did not receive a performance evaluation during his 18-month tenure at Epic. (Szlachtowicz Dep. at pp. 51-52, PgID 150 (explaining that Epic did not give its employees formal performance reviews at that time).) (ECF No. 21-8,

3

Deposition of Liana Noel Wroblewski ("Wroblewski Dep.") at p. 92, PgID 783 (explaining that performance reviews were not conducted on employees at Epic).) Szlachtowicz testified that he thought Plaintiff "did well" with the "early phases of building equipment" when he was hired, but that "[a]s things got more technical," he was not "able to fit the bill." (Szlachtowicz Dep. at p. 36, PgID 146.) Plaintiff otherwise did not receive any discipline or formal criticism regarding his work during his tenure at Epic, and Defendant admits in its Answer that Plaintiff "performed his duties competently and diligently." (ECF No. 4, Def.'s Answer ¶ 10, PgID 27.)

Plaintiff asserts that he has suffered from Atrial Fibrillation ("A Fib"), "'an irregular and often rapid heart rate that can increase your risk of stroke, heart failure and other heart-related complications,'" since at least 2018. (Compl. ¶¶ 11-12, PgID 3.) During his employment with Epic, Plaintiff treated with his doctors on multiple occasions, attending doctor's visits and undergoing two hospitalizations. (Pl.'s Resp. at p. 6, PgID 291.)

On March 19, 2018, Plaintiff notified Liana Wroblewski, Defendant's Human Resources Manager, of his upcoming doctor appointments, and Wroblewski in turn emailed Szlachtowicz and Schoenfeldt, stating that Plaintiff "has two appointments [on March 20th], one in the morning to drop off his heart equipment and one in the

afternoon for a foot doctor. He said Dave Schoenfeldt is aware of this." (ECF No. 21-13, Wroblewski 3/19/18 email, PgID 413.)[1] Wroblewski also noted in that email that Plaintiff had upcoming doctor appointments on March 26th and April 2nd. (*Id.* PgID 414.) The email does not provide any further information regarding these doctor appointments. (*Id.*)

On April 3, 2018, Wroblewski emailed Szlachtowicz, Schoenfeldt, and Sheikh to inform them of two more doctor appointments for Plaintiff on April 6th, for blood work in the morning, and on April 10th, for an "[a]ll day doctor appointment." (*Id.* PgID 413.) The email stated that Plaintiff "will let [Wroblewski] know if he can come in on Wednesday, 4/11, it depends on how the Tuesday appointment goes." (*Id.*) According to Plaintiff's Complaint, on April 10, 2018, he underwent a procedure to place a stent in his heart. (Compl. ¶ 15, PgID 3.) Plaintiff remained hospitalized overnight, and Plaintiff's son left a voicemail for Wroblewski to inform her that Plaintiff had a "procedure" and would be kept overnight at the hospital. (ECF No. 21-14, Hospital Record, PgID 416; Wroblewski Dep. at p. 64, PgID 776.)

---

[1] Szlachtowicz explained that generally if an employee needed time off for vacation or a medical appointment, he or she would notify his or her immediate supervisor and/or HR (Wroblewski), and HR would send the employee's supervisors an email to keep them informed. (Szlachtowicz Dep. at pp. 53, 58-59, PgID 151-52.)

Plaintiff's cardiologist's office, Healthy Heart and Vascular, provided a note to Defendant, dated April 11, 2018, stating that Plaintiff "is not to return to work until 4/16/18" and that he can then "work without restrictions." (ECF No. 21-16, 4/11/18 Note, PgID. 869.) Wroblewski in turn advised Plaintiff's supervisors that Plaintiff needed to take the rest of the week off. (ECF No. 21-17, Wroblewski 4/11/18 email, PgID. 871.) Plaintiff returned to work with no restrictions on April 16, 2018, and was scheduled for a follow-up doctor appointment the next day. (ECF No. 21-17, Wroblewski 4/16/18 email, PgID. 871.)

On June 26, 2018, Plaintiff was admitted to the hospital, and Wroblewski emailed Plaintiff's supervisors that Plaintiff was in the hospital, and that he "is okay" and expecting to be discharged and back at work on June 29th. (ECF No. 21-18, Wroblewski 6/27/18 email, PgID. 873.)

On October 4, 2018, Wroblewski emailed Szlachtowicz and Schoenfeldt to inform them that Plaintiff would be leaving work early because he "has a doctor appointment today to see his heart doctor." (ECF No. 21-19, Wroblewski 10/4/18 email, PgID. 875.) Plaintiff claims that at this appointment, he learned that he would need to take time off in December 2018 for an additional hospital stay related to his heart. (Compl. ¶ 27, PgID. 4.) Plaintiff states that he met with Wroblewski on October 10, 2018, the day he was laid off, and while walking with her to his termination

6

meeting, he told her that he would need time off for an upcoming December hospital stay. (Compl. ¶ 28, PgID 4) (ECF No. 13-6, Deposition of Mirko Atanasovski ("Atanasovski Dep.") at p. 55, PgID 197.) Defendant had decided the previous day, October 9, 2018, to terminate Plaintiff and set up the October 10, 2018 meeting. (ECF No. 13-14, Wroblewski 10/9/18 email, PgID 275-76.) Defendant denies that Plaintiff ever previously requested to take leave in December 2018. (Answer ¶¶ 27-28, PgID 33.)

### 3. Defendant implements a reduction-in-force ("RIF"), affecting a majority of its Machine Builders, including Plaintiff

Defendant states that, less than one year after hiring Plaintiff, its revenues diminished by more than 50 percent. (ECF No. 13-3, Def.'s Financial Chart, PgID 134.) Szlachtowicz stated that Defendant was also experiencing a downturn in work, explaining that "the early phases [of its projects] were over for some of our main lines and [Defendant] needed to right size the business at that time." (Szlachtowicz Dep. at pp. 30-31, 89-90, PgID 145, 160.) Szlachtowicz explained that the "builds" were coming into a state where they needed to be "technically troubleshooted" and "trialed and debugged," and thus there were a group of individual employees whose skillsets were no longer needed. (*Id.*)

7

As a result, Defendant implemented a reduction-in-force, and 16 of its 28 Machine Builders, including Plaintiff were laid off between September 2018 and July 2019. (Def.'s Mot. at pp. 2-3, PgID 587-88, citing ECF No. 19-1, Build Department Spreadsheet, PgID 612.)  Ten of the 16 employees laid off were younger than 40 years old at the time they were laid off. (*Id.*)

On October 9, 2018, Szlachtowicz informed Wroblewski that Plaintiff was to be laid off. (Wroblewski Dep. at pp. 38-39, PgID 770.) Szlachtowicz made the decision to terminate Plaintiff, with input from Sheikh, the Plant Foreman. (Szlachtowicz Dep. at p. 32, PgID 145.) Szlachtowicz and Sheikh agreed that Defendant was "running out of work that filled [Plaintiff's] skill set capabilities amongst other people at that time." (*Id.* at pp. 30, 32, PgID 145.) Szlachtowicz explained that Plaintiff was a good fit for the early phases of the builds, but as things became more "technical," Plaintiff did not have the right skills. (*Id.* p. 36, PgID 146.)

Wroblewski in turn sent an email to Steve Wilkins, President, and David Gardiner, Chief Financial Officer, copying Szlachtowicz, informing them that Plaintiff and two other employees (also Machine Builders) will be laid off. (Wroblewski 10/9/18 email, PgID 275-76; Wroblewski Dep. at p. 15, PgID 764.) Wroblewski wrote that one employee, Dylan Alley, is currently suspended from work due to performance issues and that "[t]he decision to lay him off has been made

8

because of his attendance and performance issues." (Wroblewski 10/9/18 email, PgID 275-76.) Kenny Armen, the other employee, was currently on medical leave, and Wroblewski wrote that he was not qualified for FMLA leave, and would be laid off "strictly due to lack of work." (*Id.*) The email did not give any reason as to why Plaintiff was to be laid off. (*See id.*) Wroblewski wrote that two additional employees, Jacob Tinch and Michael Ware, both Machine Builders, "are still up for discussion." (*Id.*)

Plaintiff claims that on October 10, 2018, he informed Wroblewski, while they were walking to his termination meeting, about his need for an upcoming hospital stay in December 2018. (Compl. ¶ 28, PgID 4; Atanasovski Dep. at p. 55, PgID 197.) Wroblewski, along with Sheikh and Schoenfeldt, met with Plaintiff and terminated his employment. (Atanasovski Dep. at p. 55, PgID 197; Wroblewski Dep. at p. 94, PgID 784.) Wroblewski read from a script she had prepared that stated, in part:

> We are here because, as you already know, we have reduced your hours due to the slowdown. As of today, effective immediately, we are laying you off from your position here at Epic. We want you to know that this decision was made after long and careful reviews and realizations that this will affect many good employees. It was not an easy decision for us. Here is your official notice of layoff.

(Wroblewski Dep. at p. 95, PgID 784; ECF No. 21-20, Wroblewski Termination Script, PgID 877.) Wroblewski testified that Plaintiff simply responded, "Okay,"

9

and they walked to Plaintiff's toolbox to begin the checkout process. (Wroblewski Dep. at p. 99, PgID 785.)

Wroblewski emailed Wilkins and Gardiner later that day, again copying Szlachtowicz, informing them that Plaintiff had been laid off, but that she did not reach the other two individuals, Alley and Arman. (ECF No. 13-14, Wroblewski 10/10/18 email, PgID 275.) According to the Build Department Spreadsheet, both Alley and Arman were also terminated effective October 10, 2018. (Build Department Spreadsheet, PgID 612.)

In total, Defendant laid off 16 of its 28 Machine Builders in the RIF, and ten of those 16 employees were younger than 40 years old. (Def.'s Mot. at p. 3, PgID 588, citing Build Department Spreadsheet, PgID 612.) Four of the 16 laid off employees were subsequently recalled, and two of those four employees are over 40 years old.  (*Id.*) However, since Plaintiff's termination, no new Machine Builders have been hired by Defendant. (Wroblewski Dep. at p. 103, PgID 786.)

## B.    Procedural History

Defendant filed a Motion for Summary Judgment, arguing that all of Plaintiff's claims should be dismissed. (ECF No. 19, Def.'s Mot. S.J.) Defendant contends that Plaintiff fails to establish a claim of age discrimination because he was terminated as part of a workforce reduction and there is no inference of age animus

or that age was a factor is the decision to lay off Plaintiff. Defendant argues that Plaintiff fails to state an actionable disability discrimination claim because he cannot establish that "but for" his disability, he would not have been laid off. Finally, Defendant argues that Plaintiff's FMLA claims fail because he never requested FMLA leave, he was always granted time off when requested, and he cannot establish a causal connection with his lay off or present evidence of retaliatory intent.

Plaintiff filed a response in opposition to Defendant's motion. (ECF No. 21, Pl.'s Resp.) Plaintiff argues that he can establish a prima facie case of disability and age discrimination because Defendant treated several significantly younger and/or non-disabled similarly-situated employees with less experience better than Plaintiff by retaining some and recalling other laid-off employees after the RIF. Plaintiff further contends that he placed Defendant "on notice" that he was seeking medical treatment, but Defendant never provided him with FMLA paperwork and then terminated him without affording him his right to utilize FMLA leave for his heart condition, and that Defendant retaliated against him because he required FMLA leave. Finally, Plaintiff argues that Defendant's proffered legitimate non-discriminatory reason for terminating his employment is pretextual because Defendant offered "shifting reasons" for its employment decision.

11

Defendant filed a reply brief asserting that Plaintiff has failed to demonstrate the heightened burden necessary to establish a prima facie case of age discrimination in a RIF case, and instead relies on his subjective and biased assertions that he was more qualified than other employees who were retained. (ECF No. 20, Def.'s Reply.) Defendant contends that Plaintiff has failed to establish that his disability was the "but for" cause of his termination and that he has failed to state a prima facie case under the FMLA. Finally, Defendant argues that Plaintiff fails to establish that Defendant's reason for his layoff was pretextual, and that discrimination was the real reason for his termination.

## II.  LEGAL STANDARD

Summary judgment is appropriate where the moving party demonstrates that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a). "A fact is 'material' for purposes of a motion for summary judgment where proof of that fact 'would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties.'" *Dekarske v. Fed. Exp. Corp.*, 294 F.R.D. 68, 77 (E.D. Mich. 2013) (quoting *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for

the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

"In deciding a motion for summary judgment, the court must draw all reasonable inferences in favor of the nonmoving party." *Perry v. Jaguar of Troy*, 353 F.3d 510, 513 (6th Cir. 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). At the same time, the non-movant must produce enough evidence to allow a reasonable jury to find in his or her favor by a preponderance of the evidence, *Anderson*, 477 U.S. at 252, and "[t]he 'mere possibility' of a factual dispute does not suffice to create a triable case." *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 576 (6th Cir. 2004) (quoting *Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). Instead, "the non-moving party must be able to show sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy." *Arendale v. City of Memphis*, 519 F.3d 587, 601 (6th Cir. 2008) (quoting *Lewis v. Philip Morris Inc.*, 355 F.3d 515, 533 (6th Cir. 2004)). "The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. The plaintiff must present more than a mere scintilla of the evidence. To support his or her position, he or she must present evidence on which the trier of fact could find for the plaintiff." *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000) (internal quotation marks and

citations omitted). "'The central issue is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Binay v. Bettendorf*, 601 F.3d 640, 646 (6th Cir. 2010) (quoting *In re Calumet Farm, Inc.*, 398 F.3d 555, 558 (6th Cir. 2005)). That evidence must be capable of presentation in a form that would be admissible at trial. *See Alexander v. CareSource*, 576 F.3d 551, 558–59 (6th Cir. 2009).

## III. ANALYSIS

### A.    Discrimination Analysis

In the absence of direct evidence of discrimination, the courts apply the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to evaluate workplace discrimination claims. *See Thompson v. Fresh Prods., LLC*, 985 F.3d 509, 522 (6th Cir. 2021) (applying framework to age and disability discrimination claims) (citing *Williams v. AT&T Mobility Servs. LLC*, 847 F.3d 384, 395 (6th Cir. 2017); *Carter v. Univ. of Toledo*, 349 F.3d 269, 273 (6th Cir. 2003); *Cooley v. Carmike Cinemas, Inc.*, 25 F.3d 1325, 1329 (6th Cir. 1994)).

Under this framework, the plaintiff must first establish a prima facie case of discrimination, which requires him to show that: (1) he is a member of a protected group; (2) he was subjected to an adverse employment decision; (3) he was qualified

14

for the position; and (4) he was replaced by a person outside of the protected class. *Id.* (citing *Carter*, 349 F.3d at 273 (citing *Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 349 (6th Cir. 1997)). However, "when a termination arises as part of a [RIF, and the plaintiff is not actually "replaced"], the fourth element of the *McDonnell Douglas* test is modified or heightened to require the plaintiff to provide 'additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons.'" *Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F.3d 261, 265 (6th Cir. 2010) (internal citations omitted); *see also Thompson*, 985 F.3d at 522 (applying this heightened analysis to disability, age and race discrimination claims).[2] This additional, heightened requirement also applies to a plaintiff alleging a claim under Michigan's ELCRA. *Geiger v. Tower Auto.*, 579 F.3d 614, 626 (6th Cir. 2009); *Matras v. Amoco Oil Co.*, 424 Mich. 675, 684-85 (1986) (explaining that "[e]vidence that a competent older employee was terminated, and a younger one was retained, is insufficient standing alone to establish a prima facie case when the employer reduces his workforce because of economic necessity," and that "the courts have required the employee to

---

[2] "A work force reduction situation occurs when business considerations cause an employer to eliminate one or more positions within the company." *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990). Plaintiff does not dispute that he was laid off as part of a RIF at Defendant.

present sufficient evidence on the ultimate question – whether age was a determining factor to discharge the older protected employee."). The "guiding principle" in a workforce reduction discrimination case is that "the evidence must be sufficiently probative to allow a factfinder to believe that the employer intentionally discriminated against the plaintiff because of age." *Barnes,* 896 F.2d at 1466.

Once the plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the employment action. *See Lefevers v. GAF Fiberglass Corp.*, 667 F.3d 721, 725 (6th Cir. 2012). Once an employer rebuts a stated prima facie case with a legitimate, non-discriminatory reason for the adverse employment action, "the presumption of discrimination no longer exists, and [plaintiff] must prove that the reasons offered by the [employer] were in fact pretextual in order to prevail." *Browning v. Dep't of the Army*, 436 F.3d 692, 695 (6th Cir. 2006). The plaintiff may show pretext by demonstrating that the employer's explanation "had no basis in fact, did not actually motivate the defendant's challenged conduct, or was insufficient to motivate the defendant's challenged conduct." *Lefevers*, 667 F.3d at 725. "An employer is entitled to summary judgment 'if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." *Chen v.*

*Dow Chem. Co.*, 580 F.3d 394, 400 n.5 (6th Cir. 2009) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000)).

### B.     Plaintiff's Age Discrimination Claims (Counts II and III)

Plaintiff alleges that Defendant discriminated against him because of his age, in violation of the ADEA and the Michigan ELCRA, by posting his position,[3] terminating his employment, and retaining "significantly younger" employees "with less experience." (Compl. Counts II and III, PgID 8-10.) Defendant argues that Plaintiff cannot establish a prima facie case of age discrimination under either statute because he cannot present "additional direct, circumstantial, or statistical evidence" that he was terminated because of his age, or that his age was a "determining factor" in Defendant's lay-off decision. (Def.'s Mot. at pp. 6-9, PgID 596, 591-94.)

The ADEA and the Michigan ELCRA prohibit employers from discriminating against employees "because of" their age. 29 U.S.C. § 623(a)(1) (prohibiting an employer from discriminating against an employee "because of such individual's age"); Mich. Comp. Laws § 37.2202(1)(a) (same). The Court analyzes discrimination claims under both statutes using the same framework. *Tilley v. Kalamazoo Cnty. Rd. Comm'n*, 777 F.3d 303, 307 (6th Cir. 2015); *Bondurant v. Air*

---

[3] This "posting" allegation was not discussed at all in the parties' briefing or at oral argument, and appears to be a non-issue as it is undisputed that Defendant has not hired any new Machine Builders since Plaintiff's lay off.

17

*Line Pilots Ass'n Int'l*, 679 F.3d 386, 394 (6th Cir. 2012). The plaintiff bears the burden of showing that he was terminated "because of" his age. *Thompson*, 985 F.3d at 526 (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009)); *Matras*, 424 Mich. at 684.

Defendant states that Plaintiff was included as part of an economic workforce reduction and never replaced. (Szlachtowicz Dep. at pp. 139-40, 173, PgID 172, 181.) Plaintiff does not dispute that he was terminated as part of a RIF and that he was not replaced, and that he must provide "additional direct, circumstantial, or statistical evidence tending to indicate that [Defendant] singled out [him] for discharge for impermissible reasons." (Pl.'s Resp. at pp. 14-15, PgID 645-46.)[4]

Plaintiff argues that at age 61, he was the oldest Machine Builder in the department when he was terminated. (Pl.'s Resp. at p. 15, PgID 646.) He also

---

[4] Plaintiff claims in his response that "the fourth element [of the prima facie case] may be satisfied by showing that persons outside the protected class were retained in the same position or that there was some other evidence indicating that the employer did not treat age neutrally in deciding to dismiss the plaintiff." (Pl.'s Resp. at p. 15, PgID 646, citing *Skalka v. Fernald Envtl. Restoration Mgmt. Corp.*, 178 F.3d 414, 421 (6th Cir. 1999).) However, as Defendant explains in its reply brief, the Sixth Circuit expressly rejected this statement in *Skalka* – that plaintiff need only show that "persons outside the protected class were retained in the same position [as plaintiff]" – as *dicta* and inconsistent with precedent and well-established case law that requires more than a mere demonstration of an age differential to establish a prima facie case when a termination arises as part of a RIF. (Def.'s Reply at p. 1, PgID 614, citing *Schoonmaker*, 595 F.3d at 266-67.)

contends that Defendant "treated several similarly-situated employees better than" him "by retaining and recalling them despite the RIF," and that "these employees are significantly younger." (*Id.*) However, while Plaintiff's age is certainly relevant, the fact that Plaintiff was the oldest employee in the Machine Builder department, both when he was hired at age 60 and when he was laid off at age 61, is not sufficient to establish a prima face case of age discrimination in a reduction in force case. *See Almond v. ABB Indus. Sys., Inc.*, 56 F. App'x 672, 678 (6th Cir. 2003) ("[T]he mere fact that a terminated employees is the oldest in his department is insufficient to create suspicious circumstances under the ADEA."). As the Sixth Circuit recognizes, "the fact that a competent older employee was terminated and a younger employee was retained is not dispositive.... Indeed, standing alone, such a showing fails to establish a prima facie case of age discrimination.... [T]he decision to discharge a qualified, older employee is not inherently suspicious.... In a RIF, qualified employees are going to be discharged." *Brockelhurst v. PPG Indus., Inc.*, 123 F.3d 890, 896 (6th Cir. 1997) (citing *Barnes*, 896 F.2d at 1466).

Along the same lines, "the retention of an employee younger than a competent plaintiff is insufficient to establish a prima facie case of age discrimination in the RIF context." *Thompson*, 985 F.3d at 527 (citing *Schoonmaker*, 595 F.3d at 267) (collecting cases)). Moreover, as Defendant explains, ten of the 16 laid off

employees were younger than 40 years old, seven of the 12 retained employees were over the age of 40, and two of the four recalled employees were older than 40. (Def.'s Mot. at pp. 2-3, PgID 587-88; Def.'s Reply at p. 2, PgID 615, citing Build Department Spreadsheet, PgID 612.) Further, in October 2018, when Plaintiff was laid off, the average age in the Build Department was 37.45 years old, and the average age of the employees included in the RIF, including Plaintiff, was less, at 34.17 years old. (Def.'s Reply at p. 2, PgID 615, citing Build Department Spreadsheet, PgID 612.) These numbers support an inference that age did not pay a part in Defendant's RIF determinations.

Plaintiff contends that he was "qualified for his Machine Builder position" and "never received any warnings, discipline, or criticisms about anything." (Pl.'s Resp. at p. 15, PgID 646.) However, Defendant does not argue that Plaintiff was not qualified, or that Plaintiff was laid off or terminated for performance reasons. Rather, Defendant states that Plaintiff was terminated as part of an "economically motivated RIF," in which it was forced to eliminate more than 50% of its Machine Builders, including Plaintiff. (Def.'s Mot. at p. 9, PgID 594.) *See Brockelhurst*, 123 F.3d at 896 ("In a RIF, qualified employees are going to be discharged."). Thus, whether or not Plaintiff was disciplined or had documented performance issues is not relevant.

Plaintiff also asserts that he was "far more qualified for retention than the significantly younger similarly-situated employees that Epic retained and recalled despite its RIF." (Pl.'s Resp. at pp. 15-16, PgID 646-47.) Plaintiff baldly claims that he had "superior experience" than the Machine Builders retained and recalled, based on his 20 years of experience as a machine builder prior to joining Defendant and that he was paid "more money," which he contends was "based upon his recommendation and experience at the time he was hired." (*Id.*) However, as Defendant explains, "years of service d[o] not equate to ability." (Def.'s Reply at p. 4, PgID 617.) Similarly, pay rate does not equate to ability. (*See* Szlachtowicz Dep. at p. 44, PgID 148 ("There are different capabilities within the machine builder title. Some are more experienced. It's like any other trade. You have more experienced and more technical people throughout the industry that are more suited to do one job than another.").) Ability to accomplish one aspect of a build does not establish similar ability to accomplish later aspects of the build process.

Plaintiff's unsupported, subjective assertions that he was "far more qualified" does not support his claim of age discrimination because his contention that he was "better qualified" is nothing more than a conclusion, which is insufficient to establish a prima facie case. *Jones v. City of Franklin*, 677 F. App'x 279, 282 (6th Cir. 2017) ("[C]onclusory allegations, speculation, and unsubstantiated assertions

are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment."). An employee's evaluation of his own performance or qualifications is "irrelevant to the age-discrimination inquiry – what matters is [his supervisor's] perception of [his] qualifications." *Browning*, 436 F.3d at 698; *Wrenn v. Gould*, 808 F.2d 493, 502 (6th Cir. 1987) (employee's "perception of his competence, and the incompetence of those competing against him, is irrelevant"); *LaGrant v. Gulf & Western Mfg. Co.*, 748 F.2d 1087, 1091 (6th Cir. 1984) (an employee's "subjective determination that he was better qualified than" others who were retained is insufficient to establish that age played any role in the decision to terminate him). Defendant explained that Plaintiff's prior experience at his former employer was primarily in plastic components and interior trim, while the Machine Builder work at Defendant involved powertrain components and assemblies for drive trains of vehicles. (Szlachtowicz Dep. at pp. 38-39, 44, 111-12, PgID 147-48, 165.) Szlachtowicz explained that Plaintiff "had a lot of experience at other places with interior trim type work, but the powertrain business is a different niche[.]" (*Id.* at p. 112, PgID 165.) Szlachtowicz testified that "Mirko was really good at doing some of the general work tasks[, but that w]hen we ran out of that type of work, we really did not have a lot for him and others at that time," and that during Plaintiff's tenure with Epic, Defendant discovered that Plaintiff could not: (1) test and calibrate

22

parts and mechanisms to meet tolerances on product specifications; (2) identify units that fail test or tolerance levels; (3) tram a machine; (4) qualify a machine; (5) install a mechanical product; or (6) repair a product. (*Id*. at pp. 121-22, 171-72, PgID 168, 180.) (ECF No. 21-11, Deposition of Riffat Sheikh, Jr. ("Sheikh Dep.") at pp. 121-23, PgID 857 (same).) Plaintiff has presented no evidence that these assessments were incorrect or unjustified.

And while Plaintiff complains that Defendant made the RIF decision based on subjective evaluation criteria, rather than a documented objective evaluation or rating system, "the use of subjective evaluation criteria does not by itself show discrimination, particularly in a reduction in force case" where the plaintiff must prove that age, and not the reduction-in-force, was the real reason for his termination. *Beck v. Buckeye Pipeline Servs. Co.*, 501 F. App'x 447, 451 (6th Cir. 2012); *Browning*, 436 F.3d at 698 (what matters is the decisionmaker's perception of the candidate's qualifications, not the candidate's perception). "Absent a challenge to the underlying criteria used in the evaluation process, employers are free to make wholly subjective, unpopular and imperfect decisions." *Anderson v. Otis Elevator Co.*, 923 F. Supp. 2d 1032, 1068 (E.D. Mich. 2013) (citing *Browning*, 436 F.3d at 698). Plaintiff has presented no evidence that the evaluation process used by Defendant in making the RIF determinations was biased against older workers or

targeted older workers.  Ten of the 16 employees laid off were younger than 40 years old, seven of the 12 retained employees were over the age of 40, and two of the four recalled employees were over 40 years old. (*See* Def.'s Reply at p. 2, PgID 615, citing Build Department Spreadsheet, PgID 612,)

In *Allen v. Diebold, Inc.,* 33 F.3d 674 (6th Cir. 1994), the Sixth Circuit noted that "[t]he ADEA was not intended to protect older workers from the often harsh economic realities of common business decisions and the hardships associated with corporate reorganizations, downsizing, plant closings and relocations." *Id.* at 677. "The ADEA only bars discrimination on account of age; it does not place on employers an affirmative obligation to retain older workers whenever a reduction in staff becomes necessary." *Wilson v. Firestone Tire & Rubber Co.,* 932 F.2d 510, 517 (6th Cir. 1991). As long as they do not act with discriminatory intent, employers may eliminate positions, even when the positions are held by older employees. *Id.*

Defendant also contends that there is no evidence that the decisionmakers possessed any age animus, or that age was a factor, let alone a "determining factor," in the decision to lay off Plaintiff. (Def.'s Mot. at p. 9, PgID 594.) Plaintiff admits that he never heard anyone at Epic make discriminatory or offensive comments about his age during his tenure at Defendant. (Atanasovski Dep. at pp. 39-41, PgID 193.) Plaintiff does point out in his Response, however, a remark by Szlachtowicz

24

during his deposition, with respect to recalling an employee from the RIF, that he saved the "traveling" portion of jobs for the "younger guys." (Pl.'s Resp. at p. 16, PgID 647, citing Szlachtowicz Dep. at p. 157, PgID 177.) This remark, when taken in context, does not demonstrate that Plaintiff was "singled out" for inclusion in the layoff or not recalled "because of" age discrimination. Szlachtowicz explained that two employees (one under 40 and one over 40) were "recalled" because Defendant had some "on-the-road requirements" that required traveling out of town for weeks at a time, and that work was generally directed to people "that don't have families, can travel and be out of town for a while," to "younger guys that can travel, that aren't really attached," and that Plaintiff "really wasn't willing to travel a lot." (Szlachtowicz Dep. at p. 157, PgID 177.)

Defendant further argues that "Plaintiff cannot overcome the inference against a finding of discrimination under the 'same actor inference'" because here the hiring decision at age 60 and termination decision at age 61 were made by the same individual, Szlachtowicz. (Def.'s Mot. at pp. 9-10, PgID 594-95.) The same actor inference "allows one to infer a lack of discrimination from the fact that the same individual both hired and fired the employee." *Buhrmaster v. Overnite Transp. Co.*, 61 F.3d 461, 463 (6th Cir. 1995). Plaintiff responds that this "inference is not

mandatory and may be weakened by other evidence, such as the length of time between the hiring and firing." (Pl.'s Resp. at pp. 16-17, PgID 647-48.)

While Plaintiff is correct that this inference is not mandatory or dispositive, it can be additional evidence that an employment decision was not discriminatory. *See Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 573-74 (6th Cir. 2004). Here Plaintiff was hired at age 60 by Szlachtowicz, and then laid off 18 months later, at age 61, by Szlachtowicz.  Under these facts, the same actor inference is permissible as additional evidence to support an inference that Defendant's employment decision did not have a discriminatory basis. *See Mencarelli v. Alfred Williams & Co.*, 656 F. App'x 80, 87 (6th Cir. 2016) (same actor inference is appropriate on summary judgment as "additional evidence that [defendant's] reason for [plaintiff's] termination is not pretextual"); *Town v. Michigan Bell Tel. Co.*, 455 Mich. 688, 701 (1997) (holding that the possibility that a manager would "develop an aversion to older people" within an 18-month period is remote, at best).

Plaintiff's burden at this juncture is to present additional direct or statistical evidence to support his prima facie case. *Scott v. Goodyear Tire & Rubber Co.*, 160 F.3d 1121 (6th Cir. 1998); *Simpson v. Midland–Ross Corp.,* 823 F.2d 937, 944 (6th Cir. 1987). He has failed to present any additional evidence – beyond conclusory assertions about his qualifications – that Defendant terminated him for

26

discriminatory reasons. This is insufficient to establish a prima facie case of discrimination, and Plaintiff's claims of age discrimination under the ADEA and Michigan ELCRA in Counts II and III of his Complaint are dismissed.

### C.   Plaintiff's Disability Discrimination Claim

Just as with his age discrimination claims, Plaintiff alleges that Defendant discriminated against him because of his disabilities, in violation of the ADA, by posting his position, terminating his employment, and retaining similarly situated employees "with no history of disabilities." (Compl. Count I, PgID 5-7.) There is no claim, or evidence, that Defendant hired any new Machine Builders after Plaintiff was laid off. (Wroblewski Dep. at p. 103, PgID 786.)[5] Defendant argues that Plaintiff cannot establish a prima facie case of discrimination under the ADA because he has failed to introduce "additional direct, circumstantial, or statistical evidence tending to indicate" that Defendant "singled him out for discharge," or that "but for" his disability, he would not have been laid off. (Def.'s Mot. at pp. 11, 13-15, PgID 596, 598-600.)

Defendant states that it never denied Plaintiff's requests for time off to attend his doctor's appointments, and that there is no evidence that these appointments

---

[5] Plaintiff also alleged in his Complaint that Defendant retaliated against him for taking time off to treat his disabilities and for requesting a reasonable accommodation. (Compl. at pp. 7, PgID 6-7.) However, in his Response brief, and

affected his attendance or the number of hours he worked, as Plaintiff generally worked full days and overtime. (Def.'s Mot. at p. 14, PgID 599, citing ECF No. 13-8, Ex. 7, Plaintiff's Time Records, PgID 211-28.) Plaintiff does not address much less dispute this argument.

Defendant also asserts that Plaintiff has no direct evidence of disability discrimination, and that he admits that none of his managers made any negative remarks about his health or alleged disability. (Def.'s Mot. at p. 14, PgID 599, citing Atanasovski Dep. at pp. 38-41, PgID 193.) Again, Plaintiff does not address or dispute this argument.

To prove his disability was the reason for his discharge, Plaintiff alleges that Defendant "treated several non-disabled similarly situated employees better than Plaintiff by retaining and recalling them despite the RIF, including retaining similarly situated employees who have no known heart disabilities and recalling several other laid off employees who have no known heart disabilities." (Pl.'s Resp. at pp. 8-10, 14, PgID 639-41, 645.) In support of this assertion, Plaintiff simply lists names of some of the retained or recalled Machine Builders, their ages, and their years of "Machine Builder experience," but he provides no evidence that any of these

---

again at oral argument, Plaintiff expressly waived any claim for failure to accommodate or retaliation under the ADA. (Pl.'s Resp. at p. 14 & n.5, PgID 645.) The Court finds that these claims are abandoned.

employees did or did not have a disability. (See Pl.'s Resp. at pp. 8-10, PgID 639-41.) (Atanasovski Dep. at pp. 50-51, PgID 196 (admitting that he does not know if any other employees had heart problems or their medical history).) Thus, Plaintiff's argument is based only on unsupported conjecture, and fails to support his claim that "but for" his disability, he would not have been "singled out" to be included in the RIF, in which 16 of the 28 Machine Builders were laid off. *See Arendale v. City of Memphis*, 519 F.3d 587, 605 (6th Cir. 2005) (a plaintiff cannot survive summary judgment by "rely[ing] on conjecture or conclusory accusations").

Accordingly, the Court finds that Plaintiff has failed to establish a prima facie case of disability discrimination under the ADA, and Count I of Plaintiff's Complaint is dismissed.

### D.     Plaintiff's FMLA Claims

The FMLA entitles employees to an annual total of twelve weeks of leave for a number of reasons, including, *inter alia*, because of a "'serious health condition that makes the employee unable to perform the functions of the position of such employee.'" *Arban v. West Publ'g Corp.*, 345 F.3d 390, 400 (6th Cir. 2003) (quoting 29 U.S.C. § 2612(a)(1)(D)). The FMLA makes it unlawful for any employer "to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided [by the Act]," 29 U.S.C. § 2615(a)(1), or to "discharge or in any other

manner discriminate against any individual for opposing any practice made unlawful by [the Act]." *Id.* § 2615(a)(2).

The Sixth Circuit has recognized two discrete theories of recovery under the FMLA: (1) the "interference" theory arising under § 2615(a)(1), and (2) the "retaliation" theory arising from § 2615(a)(2). *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 282 (6th Cir. 2012). The main distinction between the two theories is the employer's intent. The interference theory has its roots in the FMLA's creation of substantive rights, and "[i]f an employer interferes with the FMLA-created right to medical leave or to reinstatement following the leave, a violation has occurred," regardless of the intent of the employer. *Id.* (quoting *Arban*, 345 F.3d at 401). In contrast, the central issue raised by the retaliation theory is "whether the employer took the adverse action because of a prohibited reason or for a legitimate nondiscriminatory reason." *Id.* (quoting *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 508 (6th Cir. 2006)). In other words, an employer's intent is relevant only in retaliation claims because those claims "impose liability on employers that act against employees specifically because those employees invoked their FMLA rights." *Id.* (citing *Edgar*, 443 F.3d at 508) (emphasis original).

Plaintiff pleads a claim under the FMLA for both interference and retaliation. (Compl. Count IV, PgID 10-11.) Defendant argues that both claims "are devoid of

the factual or legal merit to demonstrate a prima facie claim and should be summarily dismissed." (Def.'s Mot. at p. 18, PgID 603.)

### 1.    Plaintiff's FMLA interference claim

To establish a claim for interference under the FMLA, a plaintiff must show that: (1) he is an eligible employee; (2) the defendant is an employer as defined under the FMLA; (3) the employee was entitled to leave under the FMLA; (4) the employee gave the employer notice of his intention to take leave; and (5) the employer denied the employee FMLA benefits to which he was entitled. *Harris v. Metro Gov't of Nashville and Davidson Cnty., Tenn.*, 594 F.3d 476, 482 (6th Cir. 2010); *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005). An employer is liable under the interference theory when it "shortchanges an employee's leave time, denies reinstatement, or otherwise interferes with an employee's substantive FMLA rights." *Marshall v. The Rawlings Co.*, 854 F.3d 368, 384-85 (6th Cir. 2017) (alternations and citations omitted). To survive a summary judgment motion, the employee must produce evidence showing that his employer denied him leave or refused to reinstate him once he returned. *See id.* at 385.

Defendant argues that Plaintiff cannot establish the final two prongs of his prima facie case. (Def.'s Mot. at p. 19, PgID 604.)

### a. Whether Plaintiff gave notice of his intention to take leave

Plaintiff admits that he never requested a medical leave of absence. (Atanasovski Dep. at p. 44, PgID 194.) Defendant asserts that Plaintiff's failure to request a medical leave of absence while employed is fatal to his FMLA interference claim. (Def.'s Mot. at pp. 19-21, PgID 604-06.) Defendant argues that "courts have repeatedly held that the employer does not have a duty to offer FMLA [leave] absent a request." (Def.'s Mot. at pp. 19-20, PgID 604-05.)

"[N]othing in the [FMLA] places a duty on an employer to affirmatively grant leave without ... a request or notice by the employee. Rather, to invoke the protection of the FMLA, an employee must provide notice and a qualifying reason for requesting the leave." *Brohm v. JH Properties, Inc.*, 149 F.3d 517, 523 (6th Cir. 1998). However, an "employee does not have to expressly assert his right to take leave as a right under the FMLA." *Hamman v. DHL Airways, Inc.*, 165 F.3d 441, 450 (6th Cir. 1999). Rather, "[t]he critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition.'" *Brohm*, 149 F.3d at 523 (citation omitted) (stating that the employee "must request leave and give the employer notice that he is requesting such leave for a serious health condition that renders him unable to perform his position's duties").

Plaintiff offers no evidence that he ever requested or indicated a desire for additional medical leave beyond the time off he received to attend medical appointments or for his hospitalizations in the past, which was always permitted. Plaintiff argues instead that although he never expressly requested FMLA leave, he did place Defendant "on notice that he was obtaining treatment for his A-Fib." (Pl's Resp. at p. 19, PgID 650, citing Exs. 12-15, ECF Nos. 21-13 to 21-16.) However, one of those exhibits (No. 13, ECF No. 21-14) is a hospital note that was never provided to Defendant while Plaintiff was employed, and thus it is irrelevant to this analysis. The other three exhibits consist of Wroblewski's emails to Plaintiff's supervisors that Plaintiff had some upcoming doctor appointments in March and April 2018 for various reasons, that Plaintiff had "a procedure" and needed to stay in the hospital overnight in April 2018, and the April 11, 2018 doctor's note that released Plaintiff to return to work without restrictions on April 16, 2018. (ECF Nos. 21-13, 21-15, 21-16, PgID 862-63, 867, 869.) Defendant points out that Plaintiff worked 12 hours the day he returned to work that day and 63 hours that week. (Def.'s Mot. at p. 20, PgID 605, citing Ex. 7, ECF No. 13-8, Plaintiff's Time Records, PgID 228-29.) Plaintiff fails to explain how these various doctor visits and treatments would have put Defendant "on notice" that Plaintiff needed time off for a "serious health condition" that made him unable to perform the functions of his position. Not

33

every visit to the doctor implies a person suffers from a serious medical condition that may qualify for FMLA leave. *See O'Connor v. Busch's Inc.*, No. 07-11090, 2008 WL 3913688, at \*7 (E.D. Mich. Aug. 19, 2008) (holding plaintiff's requests for time off to see a doctor, without any indication she suffered from a medical condition that impaired her ability to do her job, "did not constitute notice under the FMLA") (citing *Booth v. Roadway Express, Inc.*, No. 03-660, 2005 WL 1705064 (S.D. Ohio May 11, 2005) ("There are countless reasons a person may see a doctor, and not every visit to the doctor implies a person suffers from a serious medical condition which may qualify for FMLA leave.")).

"To satisfy the FMLA's notice requirement, an employee must request leave and provide enough information for [his] employer to know that the FMLA applies to the request." *Anderson v. McIntosh Constr., LLC*, 597 F. App'x 313, 314 (6th Cir. 2015). Plaintiff offers no evidence that he requested medical leave or otherwise provided sufficient notice that he needed FMLA leave while he was employed by Defendant. He further does not contend that he was ever denied time off for any medical visits, or that anyone at Defendant made any negative comments about his health or medical condition. (Atanasovski Dep. at pp. 23, 39-41, 43, 51, PgID 189, 193-94, 196.). The Court therefore dismisses Plaintiff's FMLA interference claim for this reason. *See Brock v. United Grinding Tech, Inc.*, 257 F. Supp. 2d 1089, 1100

34

(S.D. Ohio 2003) ("To interpret the FMLA in such a way that the employer must investigate an employee's leave whenever it is informed that the employee is 'ill' or 'sick' would certainly create a burden on the employer that Congress did not intend.").

In addition, if the employer has a leave policy, the employee must "comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances." 29 C.F.R. § 825.302(d). Plaintiff admits that he received the Employee Handbook for Defendant. (ECF No. 13-12, Employee Handbook Acknowledgement, PgID 271; Atanasovski Dep. at p. 15, PgID 187.) Defendant states that Plaintiff failed to follow the procedures regarding requesting leave set forth in the FMLA policy of its Employee Handbook. (Def.'s Mot. at p. 21, PgID 606.) (ECF No. 13-11, Excerpt of Employee Handbook, PgID 265-66.) The Sixth Circuit Court of Appeals has explained that "an employer may enforce its usual and customary notice and procedural requirements against an employee claiming FMLA-protected leave, unless unusual circumstances justify the employee's failure to comply with the employer's requirements." *Srouder v. Dana Lights Axle Mfg., LLC*, 725 F.3d 608, 615 (6th Cir. 2013); *see also Cundiff v. Lenawee Stamping Corp.*, 597 F. App'x 299, 300 (6th Cir. 2015) ("If the employee does not comply with [the employer's] requirements, then the FMLA does not give

35

him the right to take leave."). Plaintiff does not contend that he followed Defendant's leave policy, or present "unusual circumstances" justifying his failure to do so, and this reason further supports dismissal of Plaintiff's FMLA interference claim.

### b.    Plaintiff suffered no harm

Defendant also argues that Plaintiff has suffered no harm, as "the FMLA is not a strict-liability statute" and "[e]mployees seeking relief under the [interference] theory must therefore establish that the employer's violation caused them harm[.]" (Def.'s Mot. at pp. 21-22, PgID 606-07, citing *Edgar*, 443 F.3d at 507-08 (internal citations omitted).)

The Court finds that, because Plaintiff failed to request FMLA leave, his interference claim fails on the fifth element of his prima facie case as well as he cannot show that he was denied FMLA benefits to which he was entitled. *See Cronk v. Dolgencorp, LLC*, No. 16-11616, 2017 WL 2225108, at *11 (E.D. Mich. May 22, 2017) ("Since Plaintiff never initiated a request with Matrix, it cannot be said that the Defendant denied her an FMLA benefit to which she was entitled. Accordingly, Plaintiff has not raised a genuine issue of material fact on the fifth prong of the *prima facie* case."); *see also Schutter v. Harold Zeigler Auto Grp., Inc.*, 416 F. Supp. 3d 708, 717 (W.D. Mich. 2019) (same).

36

Further, Plaintiff admits that he was always granted time off when requested, and that he never received any counseling, discipline or other repercussion for doing so. (Atanasovski Dep. at pp. 43, 51-52, 54 PgID 194, 196-97.) And, as discussed below, Plaintiff's termination decision, as part of the economically necessitated RIF, was made before he allegedly informed Wroblewski that he would need to take some undetermined time off in December 2018. "An employee who requests FMLA leave would have no greater protection against his or her employment being terminated for reasons not related to his or her FMLA request than he or she did before submitting the request." *Weimer v. Honda of Am. Mfg., Inc.*, 356 F. App'x 812, 818 (6th Cir. 2009) (quoting *Arban v. West Publ'g Corp.*, 345 F.3d 390, 401 (6th Cir. 2003)).

The Court therefore finds that Defendant is entitled to summary judgment on Plaintiff's FMLA interference claims.

### 2.     FMLA retaliation claim

To establish a prima facie case of FMLA retaliation, a plaintiff must show that (1) he engaged in an activity protected by the Act, (2) this exercise of his protected rights was known to the defendant, (3) the defendant thereafter took an employment action adverse to the plaintiff, and (4) there was a causal connection between the protected activity and the adverse employment action. *Arban*, 345 F.3d at 404. "In

37

order to establish such a causal connection, a plaintiff must show some type of retaliatory intent." *Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 308 (6th Cir. 2016).

Defendant argues that Plaintiff cannot demonstrate either causal connection or retaliatory intent. (Def.'s Mot. at p. 23, PgID 608.) Plaintiff contends that he engaged in "protected activity" when he took time to treat his A-Fib and when he notified Defendant "of his upcoming medical leave in December 2018." (Pl.'s Resp. at p. 20, PgID 651.)

First, Plaintiff's failure to request FMLA leave prior to his termination, and his return to a robust work schedule, including overtime, are fatal to his claim that he was retaliated against for invoking his FMLA rights. *Schutter*, 416 F. Supp. 3d at 717 (citing *Keogh v. Concentra Health Servs.,* Inc., 752 F. App'x 316, 323-24 (6th Cir. 2018)). As discussed above, Plaintiff never requested leave, and thus Defendant cannot be said to have laid off Plaintiff in retaliation for requesting or taking FMLA leave.

To the extent Plaintiff relies on his claim that he informed Wroblewski on October 10, 2018, just prior to being laid off, that he would need leave some time in December 2018, it is undisputed that the decision to lay Plaintiff off was made, at the latest, on October 9, 2018, the day prior to Plaintiff allegedly sharing that

38

information with Defendant. (Wroblewski 10/9/2018 email, PgID 275-76.) Therefore, the decision to lay off Plaintiff occurred before Plaintiff allegedly shared his need for unspecified time off in December 2018, and he therefore cannot, as a matter of law, establish a retaliation claim. *See Smith v. ACO, Inc.*, 368 F. Supp. 2d 721, 732 (E.D. Mich. 2005) (plaintiff must establish that his employer "had knowledge of [his] protected activity when it made the decision to discharge [him]; without knowledge of the protected activity, there can be no inference that the adverse action was taken because of the protected activity"); *see also Bush v. Compass Grp. USA, Inc.*, 683 F. App'x 440, 453 (6th Cir. 2017) (granting summary judgment on plaintiff's FMLA retaliation claim because "the record clearly rebuts any inference that [the plaintiff] was fired in retaliation for taking FMLA leave, because [plaintiff's employer] had decided to let him go four days prior to learning that he would take such leave.").

Therefore, Plaintiff cannot establish a causal connection between the decision to lay him off on October 9th and his alleged statement on October 10th on his way to his termination meeting that he would need unspecified leave sometime in

39

December, and the Court finds that Defendant is entitled to summary judgment on Plaintiff's FMLA retaliation claim.[6]

## E.   Pretext

Even if Plaintiff could make out a prima facie case of discrimination, Defendant still prevails because Plaintiff cannot establish that Defendant's reason for including Plaintiff in the RIF was pretextual.

Once the plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the employment action. *See Lefevers*, 667 F.3d at 725. Then "the plaintiff must produce sufficient evidence from which the jury may reasonably reject the employer's explanation as pretextual." *Id.* (citation omitted). The plaintiff may show pretext by demonstrating that the employer's explanation "had no basis in fact, did not actually motivate the defendant's challenged conduct, or was insufficient to motivate the defendant's challenged conduct." *Id*. at 725. An employer's proffered reason is not

---

[6] Defendant also argues that Plaintiff cannot establish retaliatory intent, because he was laid off as part of an economic RIF and never replaced. (Def.'s Mot. at p. 25, PgID 610.) Plaintiff does not address this argument. To the extent Plaintiff disbelieves the RIF was the reason for his termination, his conclusory allegations and subjective beliefs do not raise a jury issue. *See Mitchell v. Toledo Hosp.*, 964 F.2d 577, 585 (6th Cir. 1992).

pretextual unless it is shown both that the reason was false and that discrimination was the real reason. *Harris*, 594 F.3d at 486.

Defendant has articulated a legitimate nondiscriminatory reason for Plaintiff's termination – that he was terminated as part of an economically-necessitated workforce reduction in which Defendant was forced to eliminate more than 50% of its Machine Builders, including Plaintiff. (Szlachtowicz Dep. at pp. 31-32, 89-90, PgID 145, 160; Def.'s Financial Chart, PgID 134; Machine Builder Spreadsheet, PgID 612.) *See Shah v. NXP Semiconductors USA, Inc.*, 507 F. App'x 483, 492 (6th Cir. 2012) ("Evidence of an employer's business restructuring, which may include the elimination of jobs or termination of otherwise competent employees based on seniority, satisfies the employer's burden of producing a legitimate, non-discriminatory reason for a plaintiff's termination.") (citation omitted). Defendant explained that the builds were coming to more of a completion level and into a state where they needed to be "trialed and debugged." (Szlachtowicz Dep. at pp. 30-32, PgID 145.) At that time, the "lower tier employees" whose skillsets were no longer needed, were let go, which included Plaintiff. (*Id.*) Szlachtowicz testified that when Plaintiff was initially hired and Defendant was in the "early phases of building equipment" for the Dana and American Axle projects, that Plaintiff "fit in very good," but "as things got more technical" at build completion, he was "not able to

41

fit the bill" and that "[a]nything ... that took some extra technical ability he struggled with." (*Id.* at pp. 36-37, 121-22, PgID 146-47, 168.)

In support of his pretext argument, Plaintiff contends that Defendant proffered "several shifting non-discriminatory reasons" for his termination during the course of this litigation. (Pl.'s Resp. at pp. 22-25, PgID 653-56.) But Defendant has been consistent in its reasoning. Plaintiff acknowledges that he was told at the time of his termination that he was laid off for "lack of work." (Pl.'s Resp. at p. 23, PgID 654.)

Plaintiff then points to the "tier system" Defendant includes in Exhibit 3 to its Motion as evidence of pretext. (Pl.'s Resp. at pp. 22-23, PgID 653-54.) Szlachtowicz testified that although it was not written out, he has "used a mental tier system for years" as "way to categorize builders in regards to their craft" and "to assess people's abilities" and "to know who is strong, what and where do they fit in to our current workload," including in making the company's reduction-in-force determinations. (Szlachtowicz Dep. at pp. 125-26, PgID 169.) However, he admits that the tier categories listed in the Machine Builder Spreadsheet were only reduced to writing in response to this lawsuit:

> Q.   So you have been doing this for over two decades mentally. What was it that caused you to just a few months ago actually write it down in this document, what the criteria are?
>
> A.   This particular event.

Q.    So you prepared this as a result of the lawsuit that Atanasovski brought?

A.    I did, yes.

(Szlachtowicz Dep. at p. 129, PgID 170.) That Szlachtowicz's "mental tier system" was reproduced on an exhibit to Defendant's motion for summary judgment does not support a finding of inconsistent or shifting reasoning for the termination decision. Rather, it is consistent with Defendant's explanation that there was a downturn in work and that Defendant was forced to implement a reduction in over 50% of its Machine Builders. Plaintiff's disagreement with Defendant's "assessment of his performance [or ranking] ... does not render [Defendant's] reasons pretextual." *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1162 (6th Cir. 1990) (explaining that the employee does not raise a factual dispute by alleging that the employer made a poor business decision); *see also Gilster v. Humana, Inc.*, No. 1:14-CV-961, 2016 WL 223582, at *6 (S.D. Ohio Jan. 19, 2016) ("The employer's use of subjective evaluation criteria does not establish pretext, particularly in a reduction-in-force case, where the plaintiff must prove that age, and not the reduction-in-force, was the real reason for his termination.") (citing *Beck v. Buckeye Pipeline Serv.*, 501 F. App'x 447, 451 (6th Cir. 2012)); *Anderson*, 923 F. Supp.2d at 1068 ("Absent a

challenge to the underlying criteria, employers are free to make wholly subjective, unpopular and imperfect decisions.").[7]

Plaintiff next claims that Szlachtowicz's testimony that Plaintiff was included in the lay off because he lacked the "knowledge" or "skills" required for the business at hand is a shift in reasoning. The Court disagrees. Szlachtowicz's deposition testimony is not inconsistent, but rather explains and supports his reasoning for the employees he chose to include in the layoff, including Plaintiff, and the employees he chose to retain to handle the company's remaining work going forward. Courts may not second-guess the business judgment of an employer but must instead determine "whether the employer gave an honest explanation of its behavior." *Hedrick v. W. Res. Care Sys.,* 355 F.3d 444, 462 (6th Cir. 2004). "Time and again we have emphasized that [o]ur role is to prevent unlawful hiring practices, not to act as a super personnel department that second guesses employers' business

---

[7] *Skalka v. Fernald Environmental Restoration Management Corp.*, 178 F.3d 414 (6th Cir. 1999), which Plaintiff relies on, is distinguishable. In *Skalka*, which was an appeal from a jury verdict, and not summary judgment, Skalka was laid off despite being rated the "most competent" in the employer's objective ranking. The Sixth Circuit held on appeal that the jury could have rejected the employer's reasons for deviating from that ranking system and terminating the oldest and most qualified employee. *Id*. at p. 422. In this case, Plaintiff has not shown that Defendant deviated from its practices in order to terminate him.

44

judgments." *Corell v. CSX Transp., Inc.*, 378 F. App'x 496, 505 (6th Cir. 2010) (quoting *Risch v. Royal Oak Police Dept.*, 581 F.3d 383, 399 (6th Cir. 2009)).

Similarly, two memoranda created and placed in Plaintiff's employee file after his termination and after he filed this lawsuit are not inconsistent with the reasoning for Plaintiff's lay off. On December 12, 2018, two months after Plaintiff's termination, a memorandum was placed in his personnel file, regarding his lay off, stating:

> During the time of Mirko Atanasovski's lay off, Epic Equipment was slow on work. Therefore, there was a diminish [sic] need in the build department and more than one builder was laid off. Epic intends to lay off more staff going forward.

(ECF No. 21-3, 12/12/18 Memo, PgID 664.) Although the memorandum states that it is from "Eric Szlachtowicz," it was actually prepared by Wroblewski based on and documenting a conversation she had with Szlachtowicz. (Wroblewski Dep. at p. 105, PgID 787; Szlachtowicz Dep. at pp. 97-100, PgID 162) Wroblewski admitted that she did not place a similar memorandum in any other employee's file. (*Id*. at p. 110, PgID 788.) In any event, the reasoning in the memorandum is consistent with the reason given for Plaintiff's termination at the time of his lay off.

A second memorandum, dated June 7, 2019, was placed in Plaintiff's employee file, stating:

45

> During the time of Mirko Atanasovski's lay off, Epic Equipment was slow on work. Therefore, there was a diminish [sic] need in the build department and more than one machine builder was laid off. Epic had intended [sic] and did lay off more machine builders going forward.
>
> Mirko Atanasovski was chosen to be part of the reduction in force due to his skill set and knowledge, or lack thereof, needed to complete the current jobs that remained in the building. The jobs and tasks that were yet to be completed at the time were ones that more technically skilled builders were working on. These other technically skilled builders had been working day in and day out on job [sic] thus had more knowledge of the status and requirements to move forward successfully [sic] complete the job. The job Mirko was lined up to work on was in the completion phase and scheduled to be shipped to the customer soon therefore eliminating the need of his assistance.

(ECF No. 21-4, 6/7/19 Memo, PgID 666.) As before, although the memorandum states that it is from "Eric Szlachtowicz," it was actually prepared by Wroblewski based on and documenting a conversation she had with Szlachtowicz. (Wroblewski Dep. at p. 113, PgID 787; Szlachtowicz Dep. at pp. 102-03, PgID 163.) While the placement of these memoranda in Plaintiff's personnel file, after his termination, is perhaps a questionable practice, there is no question that the memoranda are not inconsistent with the reasons Defendant has continuously provided as to why Plaintiff was laid off – lack of work, and the need to select the appropriate personnel going forward. *See Drews v. Berrien Cnty.,* No. 20-1267, --- F. App'x ---, 2021 WL 141483, at *4 (6th Cir. Jan. 15, 2021) (finding employer's reasoning consistent because it's "decision to cut costs where it could, including by eliminating the

redundant payroll position, is entirely consistent with an overarching focus on 'good government.'") (citing *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 351 (6th Cir. 1998) (explaining that employer's reasons "all revolve[d] around a single idea" and "Plaintiff's position could no longer be justified")). With the significant downturn in its work, Defendant obviously had to make choices among its Machine Builders, as to who to keep and who to let go. An employer's business restructuring necessarily involves the elimination of jobs or termination of otherwise competent employees.[8]

More importantly, Plaintiff has failed to show that discrimination, based on age, disability, and/or FMLA leave, was the real reason for his layoff in the reduction in force in October 2018. *See Aldridge v. City of Memphis*, 404 F. App'x 29, 39 (6th Cir. 2010) (summary judgment for employer proper even though the employer may have "exaggerated the budgetary pressures that led him to make his decision," because "plaintiffs have not produced evidence from which a reasonable jury could conclude that illegal motivations more likely explained the elimination of the captain

---

[8] Plaintiff also contends that "poor workmanship" was "yet another justification for [Plaintiff's] firing." (Pl.'s Resp. at p. 24, PgID 655.) However, Defendant has not stated that Plaintiff was terminated for poor workmanship. Rather, the deposition testimony upon which Plaintiff relies is Szlachtowicz's response to Plaintiff's counsel's questions as to whether he had "any problems with [Plaintiff's] performance in any way," and not Szlachtowicz's testimony as to why Plaintiff was selected to be included in the RIF. (See Szlachtowicz Dep. at pp. 78-79, PgID 157.)

rank.") (citing, in part, *Gatch v. Milacron, Inc.*, 111 F. App'x 785, 791 (6th Cir. 2004) ("[E]ven though the [reduction in force] was not entirely necessary from a business standpoint, ... [t]his evidence simply does not permit a finding that ... discrimination rather than business judgment motivated [it]....")); *see also Slapak v. Tiger Mgmt. Grp., LLC*, 594 F. App'x 290, 295 (6th Cir. 2014) (noting that an employer "may approach its reduction in force as it sees fit," as "it is inappropriate for the judiciary to substitute its judgment for that of management") (quotation omitted).

Accordingly, the Court finds that Plaintiff has failed to present evidence of pretext sufficient to survive summary judgment on any of Plaintiff's claims, and Defendant is entitled to summary judgment on all of Plaintiff's claims. *See Anderson*, 923 F. Supp.2d at 1075 ("[S]ummary judgment is proper if, based on the evidence presented, a jury could not reasonably doubt the employer's explanation.") (citing *Reeves*, 530 U.S. at 148 ("[A]n employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.")).

## IV.   CONCLUSION

For all of the reasons set forth above, the Court **GRANTS** Defendant's motion for summary judgment and **DISMISSES** Plaintiff's Complaint **WITH PREJUDICE** in its entirety.


IT IS SO ORDERED.

|  | s/Paul D. Borman |
|---|---|
| Dated: April 5, 2021 | Paul D. Borman |
|  | United States District Judge |

49